# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK TINGEY,<br>        Plaintiff,<br><br>v.<br><br>PROBATION OFFICER DAGE GARDNER,<br>SUPERVISING PROBATION OFFICER CAITLIN McLAUGHLIN,<br>EDWARD L. BURKE, Member Board of Probation and Parole,<br>LESLIE M. GREY, Member Board of Probation and Parole,<br>GRAIG R. McKAY, Member Board of Probation and Parole,<br>MICHAEL L. GREEN, Member Board of Probation and Parole,<br>JEFFREY R. IMBODEN, Member Board of Probation and Parole,, and<br>MICHAEL C. POTTEIGER, Member Board of Probation and Parole,<br>        Defendants. | CIVIL ACTION<br><br><br>NO. 17-827 |

DuBois, J.                                                                                                                                                                                                                               November 9, 2017

## **M E M O R A N D U M**

### I.     INTRODUCTION

In this suit arising under 42 U.S.C. § 1983, plaintiff Mark Tingey asserts claims against defendants for false arrest and false imprisonment, violations of "substantive due process," and supervisory liability. The defendants are Dage Gardner, a probation officer alleged to have personally harmed plaintiff; Caitlin McLaughlin, his supervising officer; and six individual members of the Pennsylvania Board of Probation and Parole ("Parole Board"). Presently before the Court are two identical Motions to Dismiss filed by the individual members of the Parole Board: one filed by defendants Edward Burke, Leslie Grey, and Michael Potteiger, and the other

filed by defendants Craig[1] McKay, Jeffrey Imboden, and Michael Green (collectively, "Parole Board defendants"). Because plaintiff has provided only conclusory allegations against Parole Board defendants, their Motions to Dismiss are granted.

## II.    BACKGROUND

The facts below are drawn from plaintiff's Amended Complaint. The Court construes that complaint in the light most favorable to the plaintiff, as it must in a motion to dismiss. The facts set forth in the Amended Complaint may be summarized as follows:

Plaintiff started probation in Utah on January 1, 2015. Am. Compl. ¶ 9. Plaintiff transferred his probation to Pennsylvania on January 27, 2015, and met with defendant Probation Officer Dage Gardner on January 28, 2015. Am. Compl. ¶¶ 10-11. On August 11, 2015, Gardner visited and illegally searched plaintiff's home. Am. Compl. ¶¶ 13-15, 19. During the search, Gardner discovered "a pornographic email in plaintiff's spam folder," which plaintiff says he did not solicit. Am Compl. ¶ 18. The terms of plaintiff's probation prohibited him from visiting pornographic websites on his computer. Pl.'s Resp. Mot. Dismiss, Doc. Nos. 16, 23, at 4. Based on the email, Gardner threatened to have plaintiff incarcerated. Am. Compl. ¶¶ 13-15, 19.

On August 13, 2015, defendant Supervisory Probation Officer McLaughlin improperly issued a Warrant to Commit and Detain plaintiff based on the email discovered by Gardner. Am. Compl. ¶¶ 22-23. Gardner subsequently arrested plaintiff for violation of probation and detained him in a halfway house for "approximately 7 days." Am. Compl. ¶ 24. On August 20, 2015, Gardner, "at the direction and/or with the consent of Defendant McLaughlin," told plaintiff that

---

[1] The Court notes that although defendant McKay is identified by the given name "Graig" in the case caption and the Amended Complaint, defendants have identified him as "Craig" in their briefing, and that is evidently his correct name. The case caption and the Amended Complaint are amended to correctly refer to defendant Craig McKay.

unless he signed a waiver of his right to a preliminary hearing and a violation hearing, he would serve the remainder of his term in state prison. Am. Compl. ¶25. Under coercion, plaintiff signed the waiver, and was detained in the halfway house for an additional 72 days. Am. Compl. ¶¶ 26, 28. During this time, plaintiff was "threatened and robbed several times." Am. Compl. ¶ 31.

Plaintiff's allegations in the Amended Complaint against Parole Board defendants contrast with the detailed allegations against defendant Gardner. With respect to the Parole Board defendants, plaintiff alleges only that Gardner's illegal detention of plaintiff was pursuant to the "policies/practices/procedures" of the Parole Board, that the individual Parole Board defendants "were personally involved in the violation of Plaintiff's constitutional rights by acquiescing in a policy, practice or custom" of arresting probationers without probable cause, and that Parole Board defendants "took affirmative steps to violate Plaintiff's constitutional rights by failing to exercise control over the probation officers under their supervision." Am. Compl. ¶¶ 29, 50, 51. Parole Board defendants had "final decision making authority over all policies, practices and procedures regarding Probation and Parole, and, pursuant to their final decision making authority" allowed Gardner to detain plaintiff. Am. Compl. ¶ 5. Plaintiff sued Parole Board defendants in their individual capacities. Am. Compl. ¶ 6.

Plaintiff filed his first Complaint, Doc No. 1, on February 22, 2017, naming only Gardner and the Parole Board itself as defendants. Plaintiff filed an Amended Complaint, Doc. No. 4, on March 31, 2017, dropping the Parole Board as a defendant and adding McLaughlin and the individual Parole Board members as defendants. Plaintiff's Amended Complaint contains three counts. Count I sets forth claims for false arrest and false imprisonment, against all defendants, under state law. Count II sets forth claims for violation of plaintiff's substantive due process

3

rights under the Fourteenth Amendment for false arrest and false imprisonment against all defendants. Count III sets for claims for "supervisory liability" in violation of the Due Process Clause of the Fourteenth Amendment against McLaughlin and each of the individual Parole Board defendants for acquiescing in a policy, practice, or custom of detaining probationers without probable cause and for failing to control probation officers under their supervision.

Defendants Burke, Grey, and Potteiger, filed a Motion to Dismiss the Amended Complaint for failure to state a claim on June 26, 2017. Doc. No. 13. Defendants Green, Imboden, and McKay filed an identical Motion to Dismiss on September 12, 2017. Doc. No. 22. Plaintiff filed identical Responses to the Motions on July 10, 2017, Doc. No. 16, and October 11, 2017, Doc. No. 23. In his Responses plaintiff does not oppose dismissal of Counts I and II against the Parole Board defendants. Consequently, this Court dismisses Counts I and II and addresses only Count III in this Memorandum.

### III. LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 674 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007). Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s]

4

complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

## IV. DISCUSSION

### A. Applicable Law

A claim for violation of rights established in the Constitution or federal laws is brought under 42 U.S.C. § 1983.[2] *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "It is well-recognized that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015); *accord Iqbal*, 556 U.S. at 677. Two theories, however, allow a supervisory official to be held liable for his or her own conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3rd Cir. 2004)

First, a supervisory official may be liable where he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M.*, 372 F.3d at 586 (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). In seeking to impose liability on a

---

[2] Plaintiff does not state in the Amended Complaint under which statutory provisions or common law he seeks to bring his claims. The facts alleged in support of Count III of the Amended Complaint—the only count whose dismissal plaintiff opposes—turn largely on the violation of plaintiff's constitutional rights by state actors and the parties have addressed only § 1983 in their Motions to Dismiss and corresponding Responses. Thus, this Court reads Count III as purporting to state claims under § 1983.

5

policymaker, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

Second, an official may be held liable for "supervisory liability" where "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M.*, 372 F.3d at 586 (quoting *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Where the alleged wrong is not affirmative conduct by the supervisor, but failure to institute adequate supervisory procedures, a plaintiff must identify a "specific supervisory practice or procedure that [the supervisor] failed to employ" and show that "(1) the existing custom and practice without that specific practice or procedure created an unreasonable risk of [constitutional harm], (2) [the supervisor] was aware that this unreasonable risk existed, (3) [the supervisor] was indifferent to that risk, and (4) [the constitutional harm] resulted from [the supervisor's] failure to employ that supervisory practice or procedure." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *accord Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001).

Plaintiff asserts claims against Parole Board defendants in Counts I and II for plaintiff's false arrest and false imprisonment and due process deprivations and in Count III under a theory of supervisory liability for (1) constitutional harm caused by the Parole Board's policies and (2) failure to exercise control over probation officers under the Parole Board's supervision.

### B. Counts I and II: False Imprisonment and Substantive Due Process

Plaintiff does not opposed dismissal of Counts I and II for false arrest and false imprisonment under state law and deprivation of substantive due process under the Fourteenth Amendment against Parole Board defendants. Pl.'s Resp. Mot. Dismiss, Doc. Nos. 16, 23, at 3. Accordingly, Parole Board defendants' Motions are granted as to Counts I and II.

6

### C. Count III: Supervisory Liability

Plaintiff's claims under Count III of the Amended Complaint for (1) constitutional harm caused by the Parole Board's policies and (2) failure to control probation officers under the Parole Board's supervision are supported by only conclusory allegations and consequently must be dismissed.

*1. Constitutional Harm Caused by Parole Board Policy*

In his remaining claim, plaintiff argues that that Gardner acted pursuant to the "policies/practices/procedures" of the Parole Board and that the individual Parole Board defendants are consequently liable for "acquiescing in a policy, practice or custom" of arresting probationers without probable cause. Pl.'s Resp. Mot. Dismiss, Doc. Nos. 16, 23, at 9. A supervisory official may be liable where he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M.*, 372 F.3d at 586. Plaintiff's broad, generalized allegations, however, constitute nothing more than "legal conclusions" or "naked assertions" and must be disregarded. Stripped of its conclusory allegations, the Amended Complaint does not point to any specific policy, practice, or custom enacted by Parole Board defendants that caused plaintiff's constitutional harm. Further, plaintiff does not set forth any facts beyond the above conclusory allegations giving rise to a reasonable inference that defendants acted with a "deliberate indifference" to the risk of any constitutional harm posed by their policies.

Plaintiff's argument that a policymaker or municipality may be held liable where the risk posed by a policy is "obvious" is to no avail. Pl.'s Resp. Mot. Dismiss, Doc. Nos. 16, 23, at 10 (citing *City of Canton*, 489 U.S. 378, 390 (1989)). The Amended Complaint simply does not contain any allegations supporting an inference that the need for different policies was obvious.

7

In its totality, the Amended Complaint alleges only that Parole Board defendants had control over policy related to parole and probation and that Gardner acted pursuant to that policy. Am. Compl. ¶¶ 6, 29, 50, 51. This does not establish a reasonable inference that the need for an additional policy was "obvious."

Further, the need for an additional policy is not made "obvious" by the misconduct of a single officer, as plaintiff in this case argues. In *City of Canton*, the Supreme Court held that a municipality could be held liable "if the employee has not been adequately trained[,] the constitutional wrong has been caused by that failure to train," and the "shortcoming [can] be properly thought of as a city 'policy or custom.'" 489 U.S. at 387, 388. Failure to train, however, can only be said to constitute a municipality's policy or practice under § 1983 if policymakers acted with a "deliberate indifference" to the risk of constitutional harm posed by its training policies.[3] *Id.* at 389. Deliberate indifference can plausibly be shown where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. Nonetheless, the fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 391. Similarly, "[n]either will it suffice to prove that an injury or accident could have been

---

[3] Although *City of Canton* addressed municipal liability for facially constitutional policies, the same standard is applied to policymakers, sued in their individual capacities. *A.M.*, 372 F.3d at 586; *Sample*, 885 F.2d at 1118 (liability may be imposed under § 1983 only if a "'person'— whether a natural one or a municipality—has exhibited deliberate indifference to the plight of the person deprived"); *Stoneking*, 882 F.2d at 725 ("Nothing in *DeShaney* suggests that state officials may escape liability arising from their policies maintained in deliberate indifference to actions taken by their subordinates.").

8

avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."

Plaintiff in this case has premised his claim on the exact showing—the conduct of a single officer—rejected by the Supreme Court in *City of Canton*. He has failed to plead facts which give rise to a reasonable inference that the need for additional policies was obvious and that Parole Board defendants acted with deliberate indifference in their role as policymakers. Count III must be dismissed to the extent it alleges claims against Parole Board defendants in their policymaking roles.

        *2. Failure to Control Probation Officers Under Parole Board Supervision*

Plaintiff also argues that Parole Board defendants failed to adequately control probation officers under their supervision. Pl.'s Resp. Mot. Dismiss, Doc. Nos. 16, 23, at 10. Plaintiff's claim for supervisory liability under § 1983 must be dismissed because plaintiff has failed to allege facts supporting an inference that Parole Board defendants (1) had actual knowledge of and acquiesced in actions of the probation officers under their supervision or (2) failed to implement a "specific supervisory practice or procedure," *Muhlenberg Twp.*, 269 F.3d at 216. Each of these issues is discussed in turn.

First, plaintiff's generalized allegations are insufficient to support an inference that Parole Board defendants directed or "had knowledge of and acquiesced in" their subordinates' actions. *A.M.*, 372 F.3d at 586. As stated above, plaintiff has only generally averred that Parole Board defendants were responsible for (or acquiesced in) Parole Board policy and that Gardner acted pursuant to that policy. These allegations cannot support an inference that Parole Board defendants had knowledge of or acquiesced in Gardner's conduct. The Court of Appeals for the Third Circuit affirmed the dismissal of a claim of supervisory liability on similar facts in *Wood v.*

9

*Williams*, 568 Fed. Appx. 100, 106-07 (3d Cir. 2014). In *Wood*, the complaint alleged only that the defendants "acted in a supervisory capacity" and that the defendants "either directed the conduct which resulted in the violation of the Plaintiffs' federal rights as alleged; or, had actual knowledge of the subordinates violation of Plaintiffs' rights and acquiesced in said violations; or, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation or, had a policy of maintaining no policy, where one or more policies or regulations were clearly needed." *Id.* In affirming the district court's dismissal, the Third Circuit stated that the complaint provided no factual allegations supporting supervisory liability and that "[s]imply paraphras[ing] § 1983" was insufficient. *Id.* at 107, 104. Plaintiff in this case, like the plaintiff in *Wood*, has not provided any factual allegations beyond mere legal conclusions, and as in *Wood*, his complaint must be dismissed as to Parole Board defendants.

Second, plaintiff has not alleged that the Parole Board defendants failed to take a specific, protective supervisory measure in order to control the conduct of the probation officers under their supervision. As stated in *Sample*, in addition to identifying a "specific supervisory practice or procedure that [defendants] failed to employ," a plaintiff must show that (1) the existing custom and practice posed an unreasonable risk of constitutional harm without the specified supervisory practice, (2) the defendants were aware of the unreasonable risk, (3) the defendants were indifferent to that risk, and (4) the constitutional harm resulted from the defendants' failure to employ that specified practice or procedure. *Sample*, 885 F.2d at 1118.

This standard applies to plaintiff's claims. The Third Circuit has stated that this standard covers a "rubric" of supervisory roles, including, "among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance

10

standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample*, 884 F.2d at 1116. In *Sample*, the Third Circuit applied this standard to claims that a prison supervisor "failed to enforce the written procedures and that his failure resulted in" a prisoner's prolonged imprisonment. 884 F.2d at 1116. Likewise, in *Brown v. Muhlenberg Township*, the Third Circuit applied the standard to claims that a police chief failed to provide adequate training on police department policy. 269 F.3d at 216-17.

Plaintiff's claims that Parole Board defendants failed to "control" probation officers or provide them proper training, Pl.'s Resp. Mot. Dismiss, Doc. Nos. 16, 23, at 10-11, fall squarely within this "rubric" of supervision. Plaintiff, however, has failed to satisfy the requirements of the standard articulated in *Sample*. Plaintiff has not identified a specific supervisory practice the defendants failed to implement and the allegations in the Amended Complaint do not support an inference that Parole Board defendants were aware of or indifferent to the risk posed by any failure to adopt additional policies to control probation officers under their supervision. Consequently, Count III must be dismissed to the extent it alleges claims against Parole Board defendants for supervisory liability.

V. **CONCLUSION**

For the foregoing reasons, defendants Burke, Grey, and Potteiger's Motion to Dismiss and defendants Green, Imboden, and McKay's Motion to Dismiss are granted without prejudice to plaintiff's right to file a second amended complaint with respect to the claims in Count III of the Amended Complaint. "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The Court may dismiss a

11

claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

Plaintiff's claims against Parole Board defendants asserted in Counts I and II of the Amended Complaint are dismissed without prejudice by agreement. The Court does not find that amendment of plaintiff's claims against Parole Board defendants asserted in Count III of the Amended Complaint would be futile or inequitable. Thus, those claims are dismissed without prejudice. Plaintiff is granted leave to file a second amended complaint with respect to the claims asserted in Count III of the Amended Complaint within twenty (20) days if warranted by the facts and applicable law as stated in this Memorandum. An appropriate order follows.