# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK TINGEY,<br>    Plaintiff,<br><br>    v.<br><br>PROBATION OFFICER DAGE<br>GARDNER, and<br>SUPERVISING PROBATION OFFICER<br>CAITLIN McLAUGHLIN,<br>    Defendants. | CIVIL ACTION<br><br><br><br><br>NO. 17-827 |

DuBois, J.                                December 12, 2019

## **M E M O R A N D U M**

### I. INTRODUCTION

This is a suit arising under Pennsylvania state law and 42 U.S.C. § 1983.[1] Plaintiff Mark Tingey asserts claims against defendants, parole officer Dage Gardner and supervising parole officer Caitlin McLaughlin, for false imprisonment, violations of "substantive due process," and supervisory liability. Presently before the Court is defendants' Motion for Summary Judgment. The Motion is granted because each of plaintiff's claims against defendants fails as a matter of law.

### II. BACKGROUND

In 2011, while plaintiff was a student at Brigham Young University in Utah, he was charged with ten counts of sexual exploitation of a minor for possessing child pornography.

---

[1] Plaintiff does not state in the Amended Complaint under which statutory provisions or common law he seeks to bring his claims. With respect to plaintiff's state law claim in Count I, both parties rely exclusively on Pennsylvania state law in their summary judgment briefs. The Court reads Count I as purporting to assert a claim under Pennsylvania state law. Additionally, the Court reads Counts II-III as purporting to assert claims under 42 U.S.C § 1983 because the facts in support of Counts II and III of the Amended Complaint turn largely on the alleged violation of plaintiff's rights under the United States Constitution by state actors. *See Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) ("In order to establish a section 1983 claim, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law.").

Defs.' Statement Undisputed Facts ¶ 3 [hereinafter Defs.' SUF]. He was convicted on eight counts of sexual exploitation of a minor, *Id.* ¶ 4, and sentenced to 300 days in prison and a 36-month probationary period, *Id.* ¶ 6. After serving his sentence, plaintiff started probation in Utah on January 1, 2015. Am. Compl. ¶ 9. On January 13, 2015, plaintiff signed a Utah probation agreement that included several conditions, under which, *inter alia*, he was prohibited from possessing sexually stimulating or sexually exploitive material. Defs.' SUF ¶ 9. That same month, plaintiff sought to transfer his probation to Pennsylvania to be with his wife who was then residing in Philadelphia. *Id.* ¶ 7. On January 21, 2015, plaintiff signed a transfer agreement, in which plaintiff "agreed to comply with the [probation] terms and conditions imposed by Utah and Pennsylvania." *Id.* ¶ 8. Thereafter, plaintiff's probation was transferred to Philadelphia, where he met with his assigned parole officer, defendant Dage Gardner on February 26, 2015. *Id.* ¶ 10. Gardner is a parole officer employed by the Pennsylvania Parole and Probation Board. Defs.' SUF ¶ 1. Defendant Caitlin McLaughlin is a supervisory parole officer employed by the Pennsylvania Parole and Probation Board and was Gardner's direct supervisor. *Id.* ¶ 2.

On August 12, 2015, Gardner and other parole officers from the sex offender unit went to plaintiff's apartment to conduct a home visit. Defs.' SUF ¶ 14. Defendants assert that one of the other parole officers reviewed the browser history on plaintiff's computer and saw "indications of pornographic content." *Id.* ¶ 15. Plaintiff disputes this fact. Plaintiff claims that "there was no porn in Plaintiff's spam folder or elsewhere on his computer." Pl.'s Opp. Mot. Summ. J. at 2; Pl.'s Statement Disputed Material Facts ¶1a-1b. Gardner requested that plaintiff report to the parole office the next day. *Id.* ¶ 17. On August 13, 2015, plaintiff reported to the parole office and was arrested for violating his parole by possessing sexually explicit material. *Id.* ¶ 18.

On August 20, 2015, plaintiff was presented with the "Notice of Charges and Hearing," which described the charges against him and "Offender Rights at Board Hearings," which described plaintiff's rights at the various parole hearings involved in the parole violation process. Defs.' SUF ¶ 19. Plaintiff signed both documents. *Id.*; Defs.' Mot. Summ. J. Ex. J. That same day, plaintiff was presented with the "Waiver of Violation Hearing and Counsel/Admission Form." Defs.' Mot. Summ. J. Ex. K. The form explained that plaintiff had the right to a "preliminary hearing, a violation hearing, and the right to legal counsel." Defs.' SUF ¶ 21. The form also explained that plaintiff "could withdraw his admission in writing within 10 days of the admission date." *Id.* ¶ 22. Plaintiff signed the form on August 20, 2015 and "knowingly, voluntarily and willingly" admitted to the parole violation. Defs.' Mot. Summ. J. Ex. K. Plaintiff was then detained in the Kintock halfway house until October 22, 2015. Defs.' SUF ¶ 24.

Plaintiff asserts that he was coerced into admitting he violated his parole and waiving his rights to a preliminary hearing and a violation hearing. Pl.'s Response Defs.' SUF ¶ 20. Plaintiff testified at his deposition that Gardner threatened to incarcerate him at SCI Graterford, where he would be subject to sexual and physical violence, if he did not sign the Waiver of Violation Hearing and Counsel/Admission Form. *Id.* Plaintiff also testified that he asked for an attorney, but McLaughlin informed him that "he was not entitled to an attorney." *Id.*

Plaintiff filed the Complaint on February 22, 2017 (Document No. 1). On March 31, 2017, plaintiff filed an Amended Complaint against Gardner, McLaughlin, and six individual members of the Pennsylvania Board of Probation and Parole (Edward Burke, Leslie Grey, Michael Potteiger, Craig McKay, Jeffrey Imboden, and Michael Green ["Parole Board defendants"]) (Document No. 4). All defendants were sued in their individual capacities. Am

Compl. ¶¶ 2, 3, 6. Plaintiff's Amended Complaint contains three counts. Count I sets forth claims for false arrest and false imprisonment,[2] against all defendants, under state law. Am. Compl. ¶¶ 39-42. Count II sets forth a claim for violation of plaintiff's rights under the "Substantive Due Process Clause of the Fourteenth Amendment" for false imprisonment against all defendants. *Id.* ¶¶ 43-47. Count III sets forth claims for "supervisory liability" in violation of the "Due Process Clause of the Fourteenth Amendment" against McLaughlin and each of the individual Parole Board defendants. *Id.* ¶¶ 48-51.

The individual Parole Board defendants moved to dismiss the Amended Complaint. (Document Nos. 13, 22, filed June 26, 2017 and September 12, 2017). By Memorandum and Order dated November 9, 2017, the Court granted the Parole Board defendants motions and dismissed plaintiff's claims against the Parole Board defendants. On April 26, 2019, the remaining defendants— Gardner and McLaughlin—moved for summary judgment (Document No. 36). Plaintiff filed a response on June 3, 2019 (Document No. 39). Defendants filed a Reply[3] on June 17, 2019 (Document No. 42). The Motion is thus ripe for decision.

### III. LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[2] For clarity, the Court will refer to plaintiff's false arrest and false imprisonment claims simply as a claim for false imprisonment. *See Wallace v. Kato*, 549 U.S. 384, 388-89 (2005) (explaining that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter.").

[3] Defendants erroneously titled their Reply a "Sur-Reply."

4

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment[] and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants argue that the Court should grant summary judgment on Count I of the Amended Complaint because it is barred by Pennsylvania's sovereign immunity statute. With respect to Count II, defendants assert that the Court should grant summary judgment on the ground that plaintiff's substantive due process claim is precluded as a matter of law by the "more-specific-provision" rule. Finally, defendants claim that the Court should grant summary judgment on Count III of the Amended Complaint in that a finding of supervisor liability is precluded where there is no underlying constitutional violation. The Court will address each argument in turn.

### A. Count I: False Imprisonment Under State Law

Defendants argue that plaintiff's state law claim for false imprisonment in Count I of the Amended Complaint is barred by Pennsylvania's sovereign immunity statute. Defs.' Mot. Summ. J. at 4. The Court agrees with defendants. As a threshold matter, plaintiff argues that "this Court should construe the Plaintiff's Amended Complaint as alleging a claim for False

5

Arrest/Imprisonment under both the Fourth Amendment and Pennsylvania Common law." Pl.'s Response 6-7.  In this case, Count I of the Amended Complaint asserts that parole officer Gardner and supervising parole officer McLaughlin were employees of the Pennsylvania State Probation and Parole Board, who were acting within the scope of their employment when they falsely imprisoned plaintiff "without probable cause . . . in violation of state law."  Am. Compl. ¶¶ 2, 3, 40.  There is no reference to the Fourth Amendment in Count I of the Amended Complaint.  *Id.* ¶¶ 39-42.  The Court will not construe Count I of the Amended Complaint as asserting a claim under the Fourth Amendment because "a plaintiff cannot introduce new legal theories or claims through an opposition to a motion for summary judgment."  *Phillips v. SEPTA*, No. CV 16-0986, 2018 WL 827440, at *4 (E.D. Pa. Feb. 12, 2018); *see also Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *McLaud v. Indus. Res., Inc.*, 715 F. App'x 115, 121 n.5 (3d Cir. 2017).  Count I of the Amended Complaint plainly states a claim for false imprisonment solely under state law.  Am. Compl. ¶ 40.  As such, the Court must determine whether Count I is barred by Pennsylvania's sovereign immunity statute.

"Pennsylvania's sovereign immunity statute shields the Commonwealth, its officials, and its employees acting within the scope of their duties from suit."  *Foster v. McLaughlin*, 203 F. Supp. 3d 483, 488 (E.D. Pa. 2016) (citing 1 Pa. Cons. Stat. § 2310).  "Sovereign immunity's protection . . . applies regardless of whether Commonwealth employees are sued in their official or individual capacities."  *Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458, 486 (W.D. Pa. 2019); *see also Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) ("Even where a plaintiff asks for monetary damages against a defendant in his individual capacities,

sovereign immunity applies."). Pennsylvania has explicitly retained its sovereign immunity and has not waived immunity for intentional torts or claims under the Pennsylvania Constitution except in nine limited circumstances that are inapplicable in this case.[4] 42 Pa. Cons. Stat. § 8522(b); *see also Hart v. Tarrant*, No. 2:17-CV-05055-JDW, 2019 WL 5588823, at *4 (E.D. Pa. Oct. 30, 2019) (noting that Pennsylvania's sovereign immunity "shield[s] an employee of a Commonwealth agency from the imposition of liability even for intentional torts"). Pennsylvania's sovereign immunity applies to employees of the Pennsylvania Parole and Probation Board. *Johnson v. City of Philadelphia*, No. 13-CV-02963, 2013 WL 4014565, at *6 (E.D. Pa. Aug. 7, 2013) ("The [Pennsylvania] probation department is an arm of the state, and its employees are state actors, making them subject to sovereign immunity.").

Pennsylvania has not waived sovereign immunity for the tort of false imprisonment, *see* 42 Pa. Cons. Stat. § 8522(b), and the Amended Complaint states that Gardner and McLaughlin were employees of the Pennsylvania State Probation and Parole Board, who were acting within the scope of their employment at the time of the alleged harm, Am. Compl. ¶¶ 2, 3, 40. Recognizing this, plaintiff concedes that "his Pennsylvania Common Law claim for False Arrest/Imprisonment [Count I] is barred by the applicable provisions of the Pennsylvania Sovereign Immunity Act." Pl.'s Response at 7. Accordingly, the Court grants defendants' Motion for Summary Judgment on plaintiff's claim for false imprisonment under state law (Amended Complaint Count I).

### B. Count II: Substantive Due Process

Count II of the Amended Complaint asserts that defendants' "decision to arrest and

---

[4] The nine limited circumstances are: "(1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highway and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522(b).

7

incarcerate" plaintiff "was an arbitrary exercise of the powers of government under the Substantive Due Process Clause of the Fourteenth Amendment." Am Compl. ¶¶ 44-45. Defendants argue that plaintiff's substantive due process claim is precluded as a matter of law by the "more-specific-provision" rule. Defs.' Mot. Summ. J. at 14. Defendants are correct.

"Noting its 'reluctan[ce] to expand the concept of substantive due process,' the Supreme Court has established the 'more-specific-provision rule.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998)). The rule states that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento*, 523 U.S. at 842 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("[W]hen government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate.").

In this case, the Fourth Amendment provides the explicit source of constitutional protection. Plaintiff asserts in Count II of the Amended Complaint that defendants "decision to arrest and incarcerate" him was "without any reasonable justification." Am. Compl. ¶ 45. This claim sounds in the Fourth Amendment's proscription against unreasonable searches and seizures. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("An arrest, of course, qualifies as a 'seizure' of a 'person' under [the Fourth Amendment]."). Thus, the "more specific provision" rule applies. *See Moyer v. Borough of N. Wales*, No. CIV. A. 00-CV-1092, 2000 WL 1665132, at *3 (E.D. Pa. Nov. 7, 2000) ("Substantive due process does not support a claim for . . . false arrest."); *Greenberg v. Caesars Entm't Corp.*, No. CIV.A. 14-4796, 2015 WL 437577, at *3

(E.D. Pa. Feb. 2, 2015) ("The substantive due process clause of the Fourteenth Amendment is not an appropriate source for wrongful seizure claims or false arrest claims."); *see also Washington v. Hanshaw*, 552 F. App'x 169, 172–73 (3d Cir. 2014) ("[T]o the extent [plaintiff's] substantive due process claim is predicated on damages resulting from an unconstitutional seizure, that claim is clearly foreclosed by *Albright* [*v. Oliver*, 510 U.S. 266 (1994)]."). Accordingly, to the extent that Count II of the Amended Complaint asserts a claim for false imprisonment under the substantive due process clause of the Fourteen Amendment, that claim fails as a matter of law.[5]

Even if the Court were to analyze Count II of the Amended Complaint under the Fourth Amendment through 42 U.S.C. § 1983, plaintiff's claim for false imprisonment would still fail by operation of the favorable termination rule. *See Heck v. Humphrey*, 512 U.S. 477, 485 (1994). The rule states that, "[n]o cause of action exists under § 1983 for 'harm caused by actions whose unlawfulness would render a conviction or sentence invalid' or would 'necessarily imply the invalidity of' the conviction, unless the conviction or sentence has been reversed, vacated, expunged, or otherwise favorably terminated." *Ortiz v. New Jersey State Police*, 747 F. App'x 73, 77 (3d Cir. 2018) (quoting *Heck*, 512 U.S. at 486-87). The favorable termination rule applies to claims against probation and parole officers related to revocation of parole. *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006).

Plaintiff's false imprisonment claim is barred by the favorable termination rule because there has not been a favorable termination of his parole revocation and success on his false imprisonment claim would necessarily imply the invalidity of the revocation of plaintiff's parole.

---

[5] The Court will not address plaintiff's argument that defendants violated his procedural due process rights under the Fourteenth Amendment because Count II of the Amended Complaint only asserts a claim under the substantive due process clause of the Fourteenth Amendment. *See* Am. Compl. ¶ 44 (asserting a claim "under the Substantive Due Process Clause of the Fourteenth Amendment"). Plaintiff must stand on his Amended Complaint. *See McLaud v. Indus. Res., Inc.*, 715 F. App'x 115, 121 n.5 (3d Cir. 2017); *Bell*, 275 F. App'x at 160 (3d Cir. 2008).

*Williams*, 453 F.3d at 177 (affirming dismissal of former prisoner's § 1983 claim challenging the legality of his arrest and parole revocation "because success on the § 1983 claim would necessarily demonstrate the invalidity of the Parole Board's decision" and was thus barred by *Heck*); *Johnson v. Mondrosch*, 586 F. App'x 871, 873 (3d Cir. 2014) (affirming dismissal under *Heck* of parolee's § 1983 claims challenging parole revocation because "[t]o grant [plaintiff's] requested relief would necessarily invalidate the Parole Board's decision to revoke his parole"). The Third Circuit has made clear that "[c]laims for malicious prosecution or false imprisonment arising from the prosecution, arrest, and imprisonment that led to a plaintiff's conviction are clear examples of *Heck*-barred claims, because success on those claims requires showing unlawful prosecution or imprisonment." *Ortiz*, 747 F. App'x at 77.

Plaintiff, however, argues that his "claim that Gardner coerced and threatened [him] into signing the waivers, thereby establishing probable cause for the [parole] violation, is not covered by *Heck*," because the Supreme Court "recognized that one of the exceptions to the favorable termination rule was where the probable cause was based on 'fraud, perjury, or mistake of law.'" Pl.'s Response at 16. Plaintiff's argument fails. The Third Circuit has stated that a plaintiff may not attack his guilty plea that allegedly resulted from "fraud, perjury, or other corrupt means" in a § 1983 case "rather than on direct appeal or via a habeas petition." *Fields v. City of Pittsburgh*, 714 F. App'x 137, 141 n.3 (3d Cir. 2017). In *Fields*, the Third Circuit explained that:

> The "fraud, perjury or other corrupt means" language comes from the Restatement (Second) of Torts, which sets out the rule that a conviction, *even if reversed*, "conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." There is no basis upon which to rely on this language to assert that a guilty plea that *has not* been reversed on appeal can be undermined in a collateral civil action by making such allegations.

*Id.* (emphasis in original) (internal citations omitted).

In this case, plaintiff "knowingly, voluntarily and willingly" admitted to the parole violation at issue and waived his rights to a preliminary hearing and a violation hearing "without any promise, threat, or coercion." Defs.' Mot. Summ. J. Ex. K. Plaintiff's admission operates like a guilty plea. Accordingly, if plaintiff's admission was obtained fraudulently, then the proper vehicle for plaintiff to challenge his coerced admission and waiver of his rights was a direct appeal or a habeas petition—not a § 1983 claim for false imprisonment. *Fields*, 714 F. App'x at 141 n.3. The Court therefore concludes that Count II of the Amended Complaint fails as a matter of law even when analyzed under the Fourth Amendment because it is barred by the favorable termination rule.

Because plaintiff's false imprisonment claim in Count II fails as a matter of law under either the Fourteenth Amendment ot the Fourth Amendment, the Court grants defendants' Motion for Summary Judgment on Count II of the Amended Complaint.

### C. Count III: Supervisory Liability—Defendant McLaughlin

Count III of the Amended Complaint asserts, *inter alia*, that McLaughlin "was personally involved in the decision to illegally detain the Plaintiff in Kintock," and therefore she is subject to supervisor liability. Am. Compl. ¶ 48-49. Defendants argue that Count III of the Amended Complaint fails because there is no underlying constitutional violation, and since there is no underlying constitutional violation, there can be no supervisor liability. Defs.' Mot. Summ. J. at 16. Defendants are correct.

"[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Two theories, however, allow a supervisory official to be held liable for his or her own conduct. *A.M. ex rel. J.M.K. v. Luzerne*

*Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3rd Cir. 2004). First, a supervisory official may be liable where she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M.*, 372 F.3d at 586 (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). In seeking to impose liability on a policymaker, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Second, an official may be held liable for "supervisory liability" where "she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [her] subordinates' violations." *A.M.*, 372 F.3d at 586.

Under both theories, there must be a constitutional harm for there to be a claim for supervisor liability. *See A.M.*, 372 F.3d at 586. Because, as discussed *supra*, Counts I and II of the Amended Complaint fail as a matter of law, there can be no claim for supervisor liability against McLaughlin. *See Dempsey v. Bucknell Univ.*, 76 F. Supp. 3d 565, 579 (M.D. Pa. 2015) (granting summary judgment for defendants on supervisor liability claim "[b]ecause this Court has already held that [plaintiff's] claims for false arrest and malicious prosecution fail as a matter of law, by logical extension, there was no constitutional violation and there can be no supervisory liability."), *aff'd*, 834 F.3d 457 (3d Cir. 2016). Accordingly, with respect to Count III of the Amended Complaint, the Court grants defendants' Motion for Summary Judgment.

V. **CONCLUSION**

For the foregoing reasons, the Court grants Defendants' [sic] Dage Gardner and Caitlin McLaughlin['s] Motion for Summary Judgment. There are no claims remaining in the case.

An appropriate order follows.